FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 15, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JEREMY O., | NO:  2:20-CV-00199-FVS |
| Plaintiff, | |
| v. | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT are the parties' cross motions for summary judgment.  ECF Nos. 15 and 16.  This matter was submitted for consideration without oral argument.  The Plaintiff is represented by Attorney D. James Tree. The Defendant is represented by Special Assistant United States Attorney Sarah L. Martin.  The Court has reviewed the administrative record and the parties' completed briefing and is fully informed.  For the reasons discussed below, the court **GRANTS** Plaintiff's Motion for Summary Judgment, ECF No. 15, and **DENIES** Defendant's Motion for Summary Judgment, ECF No. 16.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

## JURISDICTION

Plaintiff Jeremy O. protectively filed for supplemental security income on September 21, 2016, alleging an onset date of September 1, 2014. Tr. 166-71. Benefits were denied initially, Tr. 99-102, and upon reconsideration, Tr. 108-14. Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on November 5, 2018. Tr. 29-73. Plaintiff was represented by counsel and testified at the hearing. *Id*. The ALJ denied benefits, Tr. 12-28, and the Appeals Council denied review. Tr. 1. The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 27 years old at the time of the hearing. Tr. 33. He completed 8th grade. Tr. 69. At the time of the hearing, Plaintiff lived with his mother, who is also his caregiver, and his two brothers. Tr. 34. Plaintiff has no past relevant work. Tr. 34. He reported that he gets fired from a lot of jobs because he is not "fit to work in the field," and he is not fast enough. Tr. 38-39, 42.

Plaintiff testified that because of his depression, he cannot come out of his room every two weeks for about two to three days at a time. Tr. 40. He reported that he gets "bad anxiety" when he is around a lot of people, and he has no friends.

Tr. 35-36.  Plaintiff testified that he was hit in the head with a pole while working on a job site in 2016, and since then he has flashbacks and memory problems. Tr. 40-41, 45.  He has migraines every week that last a day or two, and neck pain that prevents him from turning his head to the right.  Tr. 41.  Plaintiff's mother also testified that she is compensated by DSHS to care for Plaintiff for 59 hours per month.  Tr. 55, 63.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the

ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE–STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4

activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant

numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since September 21, 2016, the application date. Tr. 17. At step two, the ALJ found Plaintiff has the following severe impairments: attention deficit disorder/attention deficit hyperactivity disorder, affective disorder, anxiety related disorder, learning disorder, and substance abuse/addiction disorder. Tr. 17. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 17. The ALJ then found that Plaintiff has the RFC

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can perform simple routine tasks with short and simple instructions; he must have no requirement to interact with the general public in the performance of job tasks; he can have incidental interaction with coworkers, but he cannot perform tandem work with them; he needs a stable and routine job environment; and he cannot work at a fast production rate pace.

Tr. 19. At step four, the ALJ found that Plaintiff has no past relevant work. Tr. 22. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: kitchen helper, lab equipment cleaner, yard worker, and housekeeper. Tr. 23. On that basis, the ALJ concluded

that Plaintiff has not been under a disability, as defined in the Social Security Act,

since September 21, 2016, the date the application was filed.  Tr. 24.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

him supplemental security income benefits under Title XVI of the Social Security

Act.  ECF No. 15.  Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ improperly discredited Plaintiff's symptom claims;

2. Whether the ALJ properly weighed the medical opinion evidence;

3. Whether the ALJ erred at step two; and

4. Whether the ALJ erred properly considered the lay witness statements.

## DISCUSSION

**A. Medical Opinions**

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

[but who review the claimant's file] (nonexamining [or reviewing] physicians)."

*Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted).

Generally, a treating physician's opinion carries more weight than an examining

physician's, and an examining physician's opinion carries more weight than a

reviewing physician's.  *Id.*  If a treating or examining physician's opinion is

uncontradicted, the ALJ may reject it only by offering "clear and convincing

reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater,* 81 F.3d 821, 830-31 (9th Cir. 1995)). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted).

Here, Plaintiff argues the ALJ erroneously considered the opinion of examining psychologist Thomas Genthe, Ph.D. ECF No. 15 at 3-8. In January 2018, Dr. Genthe opined that Plaintiff had severe limitations in his ability to adapt to changes in a routine work setting. Tr. 367. Dr. Genthe additionally opined that Plaintiff had marked limitations in his ability to understand , remember, and persist in tasks by following detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; learn new tasks; perform routine tasks without special supervision; ask simple questions or request assistance; communicate and perform effectively in a work setting; maintain appropriate behavior in a work setting; complete a normal work day and work week without interruptions from psychologically based symptoms; and set realistic goals and plan independently.

Tr. 367.  Finally, Dr. Genthe opined that Plaintiff's "overall severity rating" was

marked. Tr. 367.  The ALJ found Dr. Genthe's opinion "least persuasive" for

several reasons.  Tr. 21.

First, the ALJ found that

[t]he primary basis for the ratings appear to be [Plaintiff's] 'extremely low intellectual abilities.'  Dr. Genthe, however, characterized [Plaintiff's] intellectual disability as only mild.  There was little discussion about it, instead focusing on depression, anxiety, and ADHD.  Dr. Genthe observed [Plaintiff] as someone having normal inflections, balanced conversations, well-articulated words, normal orientation, and normal immediate memory.  It remains unclear how exactly Dr. Genthe viewed [Plaintiff's] reduced intellectual capacity as the primary barrier to sustaining work, especially considering that Dr. Genthe did not perform any intelligence testing.

Tr. 21.  However, as noted by Plaintiff, Dr. Genthe explicitly noted "*both* his

mental and intellectual disorders left [Plaintiff] unemployable" and Dr. Genthe

"reviewed [Plaintiff's] educational history, noted a prior intellectual assessment

from 2014, and completed an objective [mental status examination] that showed

several limitations in new learning, understanding, [and] social maturity."  ECF

No. 15 at 5 (citing Tr. 365, 368-70).  While not mentioned in the ALJ's decision, in

addition to finding Plaintiff would be impaired "indefinitely" from an intellectual

perspective, Dr. Genthe specifically noted that Plaintiff would be impaired for

twelve months due to his mental health impairments, and included a narrative

finding that Plaintiff "is unlikely to function adequately in a work setting until his

psychological symptoms have been managed more effectively." Tr. 368.  In

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

addition, Dr. Genthe diagnosed Plaintiff with major depressive disorder,

generalized anxiety disorder, other specified anxiety disorder, with post-trauma

like features, and attention-deficit/hyperactivity disorder; took a lengthy

psychosocial history as part of the clinical interview; and found on examination

that Plaintiff had tangential and circumstantial speech, poor

understanding/perception, could recall only 1 of 4 objects after five-minute delay,

did not know the number of weeks in a year, was unable to spell 'world' forward

and backward, had poor social maturity, and had poor to fair insight and judgment.

Tr. 366, 369-70.

Defendant generally argues that the ALJ may reject an opinion that is

unsupported by clinical findings.  ECF No. 16 at 3; see *Bayliss*, 427 F.3d at 1216

(a physician's opinion may be rejected if it is contradicted by that physician's own

treatment notes).  However, as discussed in detail above, Dr. Genthe conducted a

detailed clinical interview and objective mental status examination.  Moreover,

when explaining his reasons for rejecting medical opinion evidence, the ALJ must

do more than state a conclusion; rather, the ALJ must "set forth his own

interpretations and explain why they, rather than the doctors', are correct."

*Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  "This can be done by setting

out a detailed and thorough summary of the facts and conflicting clinical evidence,

stating his interpretation thereof, and making findings."  *Id*.  Here, the ALJ failed

to properly summarize and interpret the entirety of Dr. Genthe's clinical findings

1  as to Plaintiff's claimed intellectual and psychological impairments, including his

2  objective mental status examination results and clinical interview findings.  Thus,

3  his conclusory finding that the limitations assessed by Dr. Genthe were

4  "primar[ily] based" on Plaintiff's intellectual ability, as opposed to both his

5  intellectual and psychological impairments, is not supported by substantial

6  evidence.  This was not a specific and legitimate reason to reject Dr. Genthe's

7  opinion.

8          Second, the ALJ found that "Dr. Genthe believed that [Plaintiff] would be

9  unable to perform simple and repetitive tasks, but again there was no explanation

10  justifying this this determination."  Tr. 21.  In further support of this finding, the

11  ALJ cited a consultative psychological examination by Kristen Nestler, M.D.

12  finding Plaintiff could follow a three-step command and spell 'world' correctly

13  forward and backwards; and three treatment notes across the relevant adjudicatory

14  period indicating Plaintiff had normal attention and concentration span, intact

15  recent and remote memory, and "good" ability to learn.  Tr. 22 (citing Tr. 289, 392,

16  515).  Based on this evidence, the ALJ concluded that "Dr. Genthe's assessment

17  not only lacked a sufficient explanation but also was inconsistent with others'

18  observations and examination findings."  Tr. 22.

19          Relevant factors to evaluating any medical opinion include the amount of

20  relevant evidence that supports the opinion, the quality of the explanation provided

21  in the opinion, and the consistency of the medical opinion with the record as a

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

whole. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). However, as noted by Plaintiff, the "ALJ misstates Dr. Genthe's opinion. He did not find [Plaintiff] incapable of simple, repetitive tasks, but instead assessed 'significant' limitations in understanding/persisting/remembering very short and simple instructions and 'very significant' limitations in most other functions, such as learning new tasks or performing routine tasks without special supervision." ECF No. 15 at 5. The Court agrees. Dr. Genthe's narrative explanation states that Plaintiff's low intellectual abilities were "likely to interfere" with even simple and repetitive work; however, contrary to the ALJ's finding, at no point did Dr. Genthe opine that Plaintiff was "unable" to perform simple and repetitive tasks. *See* Tr. 368. Moreover, the Court's review of Dr. Nestler's examination includes additional findings that she had limited outside records; was "unable to verify any objective cognitive deficits although he did have very poor math skills; could "not confirm whether or not [Plaintiff] meets criteria for any specific learning disabilities"; and during mental status examination Plaintiff presented as "younger than his stated age," was guarded and difficult to engage, had "fair" eye contact, had restricted and depressed affect, did not attempt serial 7s, and was unsuccessful at serial 3s. Tr. 286-87.

Finally, while the ALJ properly cites more benign findings in the record such as Plaintiff's "normal" attention, concentration, and memory, the record also

contains consistent findings of depressed and anxious presentation, difficulty with

memory, restricted or blunt affect, speech difficulties, limited eye contact, fair to

poor insight and judgment, and concrete thought association.  Tr. 278, 281, 284,

286, 289, 291, 295, 297, 300, 378, 411, 422-23, 449, 452, 460, 469, 517, 546.  For

all of these reasons, the ALJ's rejection of Dr. Genthe's finding as to Plaintiff's

ability to perform simple and repetitive tasks because it was insufficiently

explained and inconsistent with the observations of "others" was not specific,

legitimate, and supported by substantial evidence.

Third, the ALJ found the "information that Dr. Genthe relied upon may not

have been fully accurate."  Tr. 22.  Specifically, the ALJ noted that Plaintiff

reported to Dr. Genthe that he had "bad anxiety" around others which caused him

to "stay home and lie down," that he rarely went out since his injury, and that he

did no social activities.  Tr. 22, 365-66.  The ALJ found these statements were

inconsistent with one previous report in 2016 that he did not isolate and that he

hung out with friends, and another report in early 2017 that he "sees friends

occasionally."  Tr. 22 (citing Tr. 280, 286).  However, as noted by Plaintiff, the

records cited by the ALJ in support of these arguments also included Plaintiff's

report that he "avoids a lot of people" due to trust issues, only "occasionally" sees

friends, "just play[s] with [his] little brother," does not participate in community or

cultural activities, and was unable to describe any hobbies or activities.  Tr. 280-

81, 286.  Thus, the Court is unable to discern inconsistency between these

statements such that it would rise to the level of a specific and legitimate reason, supported by substantial evidence, to discount the opinion of Dr. Genthe.

Fourth, and finally, the ALJ found that Plaintiff's activities are not consistent with Dr. Genthe's ratings. Tr. 22. An ALJ may discount an opinion that is inconsistent with a claimant's reported functioning. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). In support of this finding, the ALJ found that Plaintiff "has been able to live independently on his own for years," he "has friends and a girlfriend (or had one, as the case may be)," he is cooperative and friendly to providers and evaluators, he behaves appropriately and can complete lengthy interviews, he does household chores independently, shops for groceries, prepares his own meals, and manages taking his own medication. Tr. 22 (citing Tr. 286, 289, 366, 369). Plaintiff argues that the ALJ "failed to indicate how [these activities are] inconsistent with Dr. Genthe's findings." ECF No. 15 at 7. The Court agrees. As noted above, when explaining his reasons for rejecting medical opinion evidence, the ALJ must do more than state a conclusion; rather, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725.

Here, the ALJ fails to offer any explanation of why Plaintiff's "activities" are inconsistent with the specific severe and marked limitations opined by Dr. Genthe. Notably, at least a portion of the reported activities cited by the ALJ were taken from Plaintiff's reports to Dr. Genthe, including his cooperative behavior at

the appointment and his ability to perform basic self-care and "domestic skills," which Dr. Genthe presumably considered when making his overall assessment of Plaintiff's ability to perform basic work activities. *See* Tr. 365-66. Moreover, the ALJ's vague reference to Plaintiff living "independently on his own for years," with no further evidence as to Plaintiff's activities during that time, or at what point those "years" of independent living took place during the adjudicatory period, does not rise to the level of substantial evidence with which to discount Dr. Genthe's opinion. *See* Tr. 56-57 (Plaintiff's mother testified that when he moved out he was living with his "biological dad"). Finally, while the ALJ relies on evidence that Plaintiff was cooperative and friendly with evaluators and treatment providers, the Court's independent review of the record indicates that at least one of the evaluators, whose opinion the ALJ found "the most persuasive," noted that Plaintiff was a very poor historian and difficult to engage. Tr. 284. For all of these reasons, any alleged inconsistency between the marked and severe limitations opined by Dr. Genthe, and Plaintiff's ability to perform basic household, "have friends," and be cooperative in a treatment setting, is not a specific and legitimate reason, supported by substantial evidence, to reject Dr. Genthe's opinion.

Based on the foregoing, the Court finds the ALJ's reasons for rejecting Dr. Genthe's opinion were not specific, legitimate, and supported by substantial evidence. Dr. Genthe's opinion must be reconsidered on remand.

**B. Plaintiff's Symptom Claims**

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security

cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons.  Tr. 19.

As an initial matter, the ALJ briefly noted that "[o]ne would expect someone with [Plaintiff's] level of alleged mental functioning to be unable to live on his own for years, which he did prior to living with his mom."  Tr. 20 (citing Tr. 281). A claimant need not be utterly incapacitated in order to be eligible for benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Orn*, 495 F.3d at 639 ("the mere fact that a plaintiff has carried on certain activities . . . does not in any way detract from her credibility as to her overall disability.").  Regardless, even where daily activities "suggest some difficulty functioning, they may be grounds for discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1113.  However, this finding is supported by a single report from Plaintiff in 2016 that he "has been on his own" for 3 years; and the ALJ fails to consider testimony from Plaintiff's mother that before he moved back in with her in 2016, Plaintiff was living with his biological father.  *See* Tr. 56-57, 281.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 18

In considering Plaintiff's symptom claims, the ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari,* 246 F.3d 1195, 1208 (9th Cir. 2001). Here, the ALJ cites no evidence of activities performed on a daily basis, or transferable to a work environment; rather, the ALJ generally references a portion of the relevant adjudicatory period during which Plaintiff reported he was "on his own," with no further indication as to what specific activities Plaintiff performed, or any finding as to how said activities undermine Plaintiff's symptom claims. *See Orn*, 495 F.3d at 639 (daily activities may be "grounds for [rejecting symptom claims] 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'"). Thus, the ALJ's general reference to an inconsistency between Plaintiff's mental symptom claims, and his single report that he was "on his own" for three years, does not rise to the level of a clear and convincing reason, supported by substantial evidence, to discredit the entirety of Plaintiff's symptom claims.

Next, the ALJ found Plaintiff's statements are inconsistent with the mental examination findings. Tr. 20. The medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); 20 C.F.R. § 404.1529(c)(2). However, an ALJ may not discredit a claimant's pain testimony and deny benefits

solely because the degree of pain alleged is not supported by objective medical

evidence. *Rollins*, 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th

Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  Here, the ALJ

almost entirely supported this finding by citing observations made by Dr. Genthe

during his examination of Plaintiff, which includes findings of difficulty with

judgment and insight, poor social maturity, difficulty recalling objects after a 5-

minute delay, delayed responses and overinclusion of detail in responses, and

inability to spell 'world' or perform a calculation.  Tr. 20.  The ALJ also cites

several records that include "fair to normal" provider examination findings.  Tr. 20

(citing Tr. 422-23, 527, 536).  However, as noted by Plaintiff, the record also

contains ongoing evidence of depressed and anxious presentation, difficulty with

memory, restricted or blunt affect, speech difficulties, limited eye contact, fair to

poor insight and judgment, and concrete thought association.  ECF No. 15 at 15;

Tr. 278, 281, 284, 286, 289, 291, 295, 297, 300, 378, 411, 422-23,449, 452, 460,

469, 517, 546.  Moreover, because this portion of the ALJ's analysis is, at least in

part, dependent on the ALJ's evaluation of Dr. Genthe's opinion, the Court finds

this reason should be reconsidered on remand.

Similarly, the ALJ found that objective test results and mental examination

findings did not support a finding that Plaintiff's "current alleged mental

functioning relates to a brain injury in 2016."  Tr. 20.  In support of this finding,

the ALJ generally cites medical records pertaining to Plaintiff's treatment for a

1    head injury in 2016, with specific reference to "mental status examination findings

2    [that] were not indicative of severe cognitive dysfunction," and "normal" objective

3    test results.  Tr. 20.  Based on these generally cited records, the ALJ "[did] not

4    accept the notion that [Plaintiff's] 2016 work injury had caused significant brain

5    trauma and severe mental limitations given the lack of evidence of such

6    connection."  Tr. 20.  However, as noted by Plaintiff, examining physician Dr.

7    Nestler specifically noted that she was "unable to verify" objective cognitive

8    deficits, although he had "very poor math skills," and she could not "confirm"

9    whether he met the criteria for a specific learning disability.  Tr. 287.  Moreover,

10    the ALJ fails to consider Dr. Genthe's finding of "extremely low intellectual

11    abilities . . . that are likely to interfere with his ability to function"; and his

12    remarkable mental status examination findings of poor social maturity, tangential

13    and circumstantial speech, memory and concentration difficulties, and poor to fair

14    insight and judgment.  Tr. 368-70.  Thus, as above, particularly in light of the need

15    to reconsider Dr. Genthe's opinion, this reasoning should be reconsidered on

16    remand.

17          Finally, the ALJ noted "the lack of treatment notes prior to 2016 is

18    concerning, especially given [Plaintiff's] allegation of disability since 2014 and

19    special education services while in school. On would expect to see some level of

20    treatment and mental evaluation prior to 2016."  Tr. 20.  Unexplained, or

21    inadequately explained, failure to seek treatment or follow a prescribed course of

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 21

1   treatment may be the basis for an adverse credibility finding unless there is a

2   showing of a good reason for the failure. *Orn*, 495 F.3d at 638. Plaintiff argues

3   that the ALJ "reversibly erred" in this case by discrediting Plaintiff's symptom

4   claims on this basis, because he "did not complain of any shortage of records until

5   he issued his written decision. If the ALJ felt there was a need for additional

6   remote records he could have said so earlier and obtained them or had [Plaintiff]

7   obtain them." ECF No. 15 at 18-20. This argument is inapposite.

8        Plaintiff is correct that the ALJ has an independent duty to fully and fairly

9   develop a record in order to make a fair determination as to disability, even where,

10   as here, the claimant is represented by counsel. *See Tonapetyan v. Halter*, 242

11   F.3d 1144, 1150 (9th Cir. 2001). However, only "[a]mbiguous evidence, or the

12   ALJ's own finding that the record is inadequate to allow for proper evaluation of

13   the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" *Id.*

14   (quoting *Smolen v. Chater,* 80 F.3d 1273, 1288 (9th Cir.1996)). Further, "an ALJ

15   is not required to order every medical evaluation that could conceivably shed light

16   on a claimant's condition, but rather just those that would resolve ambiguities or

17   inadequacies in the record." *Lloyd v. Astrue*, No. C-11-4902-EMC, 2013 WL

18   503389, at *5 (N.D. Cal. Feb. 8, 2013) (*citing Mayes v. Massanari*, 276 F.3d 453,

19   459-60 (9th Cir. 2001)). It is Plaintiff's duty to prove that he is disabled; and this

20   burden cannot be shifted to the ALJ simply by virtue of the ALJ's duty to develop

21   the record. *See Mayes*, 276 F.3d at 459-60. The ALJ did not find, and the Court is

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 22

unable to discern, any inadequacy or ambiguity that did not allow for proper evaluation of the record as a whole.  Thus, the ALJ did not err in failing to further develop the record in this case.

Regardless, in light of the need to remand for reconsideration of Dr. Genthe's opinion, and because the ALJ's analysis of Plaintiff's symptom claims was dependent on the ALJ's analysis of Dr. Genthe's opinion, the ALJ must reconsider Plaintiff's symptom claims on remand.  On remand, as noted below, Plaintiff shall also be given the opportunity for a new hearing, and will have the opportunity to submit additional evidence from the relevant adjudicatory period.

## C. Additional Assignments of Error

Plaintiff additionally argues that the ALJ erred at step two by failing to properly consider Plaintiff's alleged traumatic brain injury and neck injury; and failing to properly consider lay witness statements, including an assessment performed by a DSHS evaluator, and testimony from Plaintiff's mother/caregiver. ECF No. 15  Because the analysis of Plaintiff's alleged physical impairments and the lay witness evidence is dependent on the ALJ's reevaluation of Plaintiff's symptom claims, and the medical evidence, including the medical opinion evidence discussed above, the Court declines to address these challenges in detail here.  On remand, the ALJ is instructed to reconsider Plaintiff's symptom claims, the medical opinion evidence, the lay witness statements, and conduct a new sequential analysis, including a reassessment of the step five finding if necessary.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 23

**REMEDY**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome[.]" *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

The Court finds that further administrative proceedings are appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). Here, the ALJ erred in considering Plaintiff's

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 24

symptom claims, and the examining medical opinion of Dr. Genthe, which calls into question whether the assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by substantial evidence. "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101. Instead, the Court remands this case for further proceedings. On remand, the ALJ must reconsider the step two finding. The ALJ must reconsider Plaintiff's symptom claims and the lay witness statements. The ALJ must also reconsider the medical opinion evidence, and provide legally sufficient reasons for evaluating the opinions, supported by substantial evidence. If necessary, the ALJ should order additional consultative examinations and, if appropriate, take additional testimony from a medical expert. Finally, the ALJ should reconsider the remaining steps in the sequential analysis, reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

2. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

3. Application for attorney fees may be filed by separate motion.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 25

1    **IT IS SO ORDERED.**  The District Court Clerk is directed to enter this

2  Order and provide copies to counsel.  Judgment shall be entered for Plaintiff and the

3  file shall be **CLOSED**.

4    **DATED** September 15, 2021.

5

6                    *s/ Rosanna Malouf Peterson*
                    ROSANNA MALOUF PETERSON

7                    United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21